**NOT FOR PUBLICATION**                                          **CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                              :
BARRY HICKS,                                  :
                                              :    Civil Action No. 09-2191
              Plaintiff,                      :
                                              :
                                              :
      v.                                      :    **ORDER & OPINION**
                                              :
COMMISSIONER OF SOCIAL SECURITY,              :    June 16, 2010
                                              :
              Defendant.                      :
_____      :

**HOCHBERG, District Judge:**

      This matter comes before the Court upon Plaintiff Barry Hicks's motion to review a final

determination of the Commissioner of the Social Security Administration ("the Commissioner")

pursuant to the Social Security Act, as amended, 42 U.S.C. § 405(g).  The motion has been

decided on the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78.

## I. BACKGROUND

A.      **Plaintiff's Medical And Vocational History**

      Plaintiff is a fifty-two year old man with a high school education.  He has held a variety

of jobs since entering the workforce in 1975, including working in shipping and receiving at a

warehouse, as a package sorter for United Parcel Service, and, most recently, as a taxi cab driver.

Plaintiff alleges he became disabled on January 15, 1992, the date he was last employed, due to

back pain, shortness of breath, HIV, and depression.

      Plaintiff was treated for lower back pain at the East Orange Veterans Affairs Hospital

("VA") from 1995-1997.  At his initial visit, Plaintiff reported that he injured his back doing

heavy lifting at home.  Following an examination on November 18, 1995, Plaintiff was diagnosed with acute lumbrosacral strain.  He was prescribed Percocet, a muscle relaxant, rest, and warm compresses.  On November 24, 1995, Plaintiff reported that his pain had greatly decreased.  On examination, Plaintiff had mild lower paraspinal tenderness and no focal motor deficits.  He was diagnosed with status-post acute lumbosacral strain, resolving, and was prescribed ibuprofen, a muscle relaxant, and a heating pad.

Plaintiff returned to the VA in October 1996, complaining again of lower back pain.  He had point tenderness of the sacral spine and in the left paraspinal muscles.  He was diagnosed with bilateral musculoskeletal strain of the lower back with sciatica, to be treated with ibuprofen and a heating pad.  Plaintiff was also advised to lose weight and exercise.  In January and February 1997, Plaintiff was still complaining of lower back pain.  On examination, neurological functioning was full in his upper extremities, and sensation was generally intact.  Based on the results of an MRI, Plaintiff was diagnosed with cord compression, secondary to S1 radiculopathy.  Surgery was recommended, but Plaintiff decided against it.  Thereafter, he received no additional treatment for his back, but continued to take over-the-counter pain relievers.

From approximately 2003 to 2008, Plaintiff attended a monthly clinic at Trinitas Hospital for monitoring of his HIV.  Overall, Plaintiff's HIV was considered well controlled with medication, and he exhibited few HIV-related complications, such as opportunistic infections, or significant fatigue, fever, or weight loss.  Additionally, progress notes from the clinic consistently indicated that Plaintiff was alert and oriented, his respiration was easy, and his lungs were clear.  Plaintiff consistently denied nausea or vomiting, but reported occasional diarrhea as a result of his HIV medications.  The clinic's notes also show that Plaintiff generally denied

2

experiencing any back pain,[1] and that he had no motor or sensory deficits. Beginning in approximately 2004, Plaintiff complained of feeling depressed. He was prescribed Paxil in December 2004, but he never saw a psychiatrist. A depression screening from March 11, 2008 was negative.

In November 2004, Dr. Schmidt, Plaintiff's treating physician at Trinitas Hospital, completed a questionnaire for the New York State Office of Disability Assistance. Dr. Schmidt opined that Plaintiff was not limited in his ability to sit or stand, but that his ability to walk, lift, carry, and handle objects was limited by fatigue. Nonetheless, Dr. Schmidt stated that Plaintiff could lift up to ten pounds occasionally. Dr. Schmidt also opined that Plaintiff was not limited in his ability to understand, remember, and carry out instructions, or in his ability to respond appropriately to co-workers and to stress.[2] Overall, he indicated that Plaintiff's ability to do work-related mental activities was "ok."

On December 21, 2004, Dr. Justin Fernando performed a consultative orthopedic examination of Plaintiff. Plaintiff reported a history of lower back pain, which had progressed slowly but was now severe. Plaintiff also reported that as a result of his HIV treatment, he experienced diarrhea about three or four times per day. He also reported suffering from shortness of breath, which limited him to walking no more than 30 or 40 feet at a time. Plaintiff indicated, however, that he cooked, shopped, and took care of his personal needs.

On examination, Plaintiff was 5'9" and weighed 233 pounds. Dr. Fernando observed that

---

[1] Plaintiff complained of back pain at some clinic visits during the period of June 2006 through January 2008. This pain was managed with over-the-counter pain relievers.

[2] However, in a separate section of the questionnaire, Dr. Schmidt indicated that Plaintiff's sustained concentration, persistence, social interaction, and adaptation were "limited." He did not provide the requested explanations for these conclusions.

3

Plaintiff's gait was normal, he needed no help changing for the exam or getting on and off the exam table, and was able to rise from a chair without difficulty. The doctor found that Plaintiff's hand and finger dexterity were intact, his grip was full, and his cervical spine and upper extremities had full range of motion. Plaintiff had limited range of motion in his thoracic and lumbar spine, but no spinal or paraspinal tenderness, or sacroiliac joint or sciatic notch tenderness. Plaintiff's strength was full throughout and he had no neurological abnormalities. An x-ray of Plaintiff's spine revealed the disc space at the L5-S1 disc was narrowed. Dr. Fernando diagnosed Plaintiff with arthritis of the lumbosacral spine possibly associated with disc herniation, HIV positive status, and exertional dyspnea.[3] Dr. Fernando opined that Plaintiff had a moderate to severe limitation for bending and lifting, as well as limitations due to exertional dyspnea.

Dr. Fernando performed a second consultative examination of Plaintiff on January 20, 2005. The results of the exam were substantially similar to those of the previous exam. Dr. Fernando also evaluated Plaintiff's pulmonary functioning. He found that Plaintiff's chest and lungs were clear, and a pulmonary function test was normal. Dr. Fernando opined that Plaintiff had moderate limitations for bending, lifting, and walking.

Plaintiff also received a consultative psychiatric examination, which was conducted by Dr. Jan Cavanaugh, Ph.D., on December 21, 2004. Plaintiff reported to Dr. Cavanaugh that he was experiencing symptoms of depression and problems with concentration, but that he had no psychiatric hospitalizations or outpatient treatment. Plaintiff also reported that he took care of his personal needs, cooked, cleaned, did laundry, shopped, managed his finances, and used

---

[3] Exertional dyspnea is provoked by physical effort or exertion that causes breathlessness or shortness of breath. "Exertional dyspnea," *Dorland's Medical Dictionary for Healthcare Consumers*, www.mercksource.com (2007).

public transportation daily.  On examination, Dr. Cavanaugh observed that although Plaintiff appeared sad, he was cooperative and related adequately, his speech was clear, and his thoughts were coherent and goal-directed.  Plaintiff was fully oriented, his attention, concentration, and memory skills were intact, and he showed fair to good insight and judgment.  Dr. Cavanaugh diagnosed Plaintiff with depressive disorder, NOS.  The doctor opined that Plaintiff was capable of understanding and following simple instructions; performing simple and complex tasks with supervision; maintaining attention and concentration for tasks for short periods of time; learning new tasks; and making appropriate decisions.  Dr. Cavanaugh further opined, however, that Plaintiff could not regularly attend a routine nor maintain a schedule due to physical limitations.

In February 2005, non-examining physicians prepared Physical and Mental Residual Functional Capacity Assessments following reviews of Plaintiff's records.  In the Physical Residual Capacity Assessment, the physician found that Plaintiff was capable of occasionally lifting ten pounds, walking at least two hours a day, and sitting about six hours a day.  In the Mental Residual Functional Capacity Assessment, Dr. Stafford noted that Plaintiff was "not significantly limited" in his ability to remember work procedures; understand, remember, and carry out simple instructions; sustain an ordinary routine without supervision; make simple work-related decisions; complete a normal workday and workweek; and deal with changes in the work setting.  Dr. Stafford further noted that Plaintiff was "moderately limited" in his ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for long periods of time; perform activities within a schedule; and maintain regular attendance.  Overall, Dr. Stafford concluded that Plaintiff had depressive disorder, NOS, with mild restrictions of daily living activities; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, and pace; and no repeated episodes of

deterioration.

Finally, in a report prepared for a New Jersey welfare program in September 2006, Dr. Schmidt opined that Plaintiff was "disabled" for the period of September 20, 2006 to September 19, 2007. Dr. Schmidt characterized Plaintiff's orthopedic disability as "Class III (functional capacity adequate to perform only little or none of the duties of usual occupation or self-care)." Dr. Schmidt listed Plaintiff's primary diagnosis as AIDS, with depression and obesity, and noted that Plaintiff was limited in his ability to climb, stoop, and bend, but provided no explanation for these limitations.

**B.    Procedural History**

On March 29, 2004, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits. Both applications were denied initially and on reconsideration. Plaintiff filed a timely request for a hearing, which was held before Administrative Law Judge ("ALJ") Gerald J. Ryan on May 31, 2006. On July 13, 2006, ALJ Ryan found Plaintiff to be not disabled, and thus not entitled to benefits. Plaintiff filed a request for review of ALJ Ryan's decision, which was denied by the Appeals Council on April 4, 2007.

Plaintiff then appealed to this Court. On October 19, 2007, on consent of the parties, the Court remanded the matter for further administrative action. The Appeals Council remanded the case to an ALJ to obtain updated medical evidence; evaluate Plaintiff's mental impairments in accordance with 20 C.F.R. § 404.1520(a); give further consideration to Plaintiff's maximum residual functional capacity; and obtain evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base.

A second hearing was held on May 15, 2008 before ALJ Donna A. Krappa. Additional medical evidence was added to the administrative record, and a vocational expert testified at the

6

hearing.  Plaintiff, represented by counsel, also testified at the hearing.  On consideration of the

entire record, ALJ Krappa found Plaintiff was not disabled prior to February 19, 2008.  ALJ

Krappa's decision became the final decision of the Commissioner on March 10, 2009, when the

Appeals Council denied Plaintiff's request for review.  Plaintiff brought the instant action on

May 11, 2009.

**C.     The Disability Standard And The Decision Of The ALJ**

      1.     *The Statutory Standard For A Finding Of Disability*

      An individual is considered disabled under the Social Security Act if he is unable to

"engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

A physical or mental impairment is defined as "an impairment that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  An individual will be

deemed disabled "only if [his] physical or mental impairment or impairments are of such severity

that [he] is not only unable to do [his] previous work but cannot, considering [his] age,

education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy…."  42 U.S.C. § 423(d)(2)(A).

      To determine whether a claimant meets this definition of disability, the Commissioner

applies the following sequential analysis prescribed by Social Security regulations, 20 C.F.R. §

416.920(a):

      *Step One: Substantial Gainful Activity*.  The Commissioner first considers whether the

claimant is presently employed, and whether that employment is substantial gainful activity.[4]  If the claimant is currently engaged in substantial gainful activity, the claimant will be found not disabled without consideration of his medical condition.  20 C.F.R. § 416.920(b).

   *Step Two: Severe Impairment.*  If the claimant is not engaged in substantial gainful activity, he must then demonstrate that he suffers from a severe impairment or combination of impairments considered severe.  A "severe impairment" is one "which significantly limits [the claimant's] physical or mental capacity to perform basic work activities."  If the claimant does not demonstrate a severe impairment, he will be found not disabled.  20 C.F.R. § 416.920(c).

   *Step Three: Listed Impairment.*  If the claimant demonstrates a severe impairment, the Commissioner will then determine whether the impairment meets or equals an impairment listed on the Listing of Impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the claimant has such an impairment, he is found disabled.  If not, the Commissioner proceeds to the fourth step.  20 C.F.R. § 416.920(d).

   *Step Four: Residual Functional Capacity.*  At Step Four, the Commissioner determines whether, despite his impairment, the claimant retains the residual functional capacity ("RFC")[5] to perform his past relevant work.  If so, the claimant is found not disabled and the inquiry proceeds no further.  If not, the Commissioner proceeds to the fifth step.  20 C.F.R. § 416.920(v), (e)-(f).

   *Step Five: Other Work.*  If the claimant is unable to perform his past work, the Commissioner considers the individual's RFC, age, education, and past work experience to

---

[4] "Substantial" work involves significant physical and mental activities.  "Gainful" work is performed for pay or profit.  20 C.F.R. § 416.972.

[5] RFC designates the claimant's ability to work on a sustained basis despite his physical or mental limitations.  The RFC determination is not a decision as to whether a claimant is disabled, but is used as the basis for determining the particular types of work a claimant may be able to perform despite his impairment(s).  *See* 20 C.F.R. § 416.945.

determine if he is able to make an adjustment to other work.  If he cannot do so, the individual will be found disabled.  20 C.F.R. § 416.920(g).

This five-step analysis involves shifting burdens of proof.  *Wallace v. Sec'y of Health and Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983).  The claimant bears the burden of persuasion through the first four steps.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  If the analysis reaches the fifth step, however, the Commissioner bears the burden of proving that the claimant is able to perform work available in the national economy.  *Id.*

2.    *The ALJ's Decision*

Applying this five-step analysis, the ALJ first found that Plaintiff had not engaged in substantial gainful activity since January 15, 1992, his alleged disability onset date.  At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: degenerative disc disease, HIV, and depressive disorder.  At Step Three, the ALJ determined that these impairments do not meet or equal any of the listed impairments in Appendix 1 of the Social Security regulations.[6]

At Step Four, the ALJ determined that before February 19, 2008, Plaintiff retained the RFC to perform sedentary work that involves lifting and carrying of no more than ten pounds occasionally and five pounds frequently, standing and walking up to two hours in an eight-hour day, and sitting up to six hours in an eight-hour day.  The ALJ further limited Plaintiff to jobs that: (1) permit three, fifteen-minute breaks during the work day; (2) require no climbing of ladders, ropes, or scaffolds; (3) require only occasional climbing of ramps or stairs, and only

---

[6] In making this finding, the ALJ compared Plaintiff's back pain symptoms to Listing 1.04 (disorders of the spine), AIDS to Listing 14.08 (human immunodeficiency virus infection), and depressive disorder to Listing 12.04 (affective disorders).  She analyzed in detail the relevant medical evidence to explain why these Listings were not met.  Plaintiff has not challenged the ALJ's findings at this Step.

occasional balancing, stooping, kneeling, crouching, or crawling; (4) do not involve exposure to temperature extremes, wetness, humidity, or to undue amounts of dust or chemical irritants; (5) permit ready access to a bathroom; (6) are simple and unskilled, involving only one or two steps; (7) are "low stress," defined by the ALJ as requiring only an occasional change in the work setting during the work day and only an occasional change in decisionmaking; and (8) do not require driving as a condition of employment.  Given this RFC, the ALJ found that Plaintiff could not return to his past relevant work.

At Step Five, the ALJ considered Plaintiff's age, education, work experience, and RFC to determine whether there were other jobs that existed in significant numbers in the national economy that Plaintiff could have performed.  The ALJ noted that on February 19, 2008, Plaintiff turned 50 years old and his age category changed under the law from a "younger individual" to "an individual closely approaching old age."  As described in the ALJ's decision, as a result of this age category change, Medical-Vocational Rule 201.12 directed a finding of disability, because there were not a significant number of jobs in the national economy that Plaintiff, as an individual "closely approaching old age," could perform.  For the period prior to February 19, 2008, the ALJ found that there were other jobs that existed in significant numbers in the national economy that Plaintiff could have performed.  In making this finding, the ALJ relied on the testimony of a vocational expert, who opined that Plaintiff would have been able to perform the tasks of a benchworker, sorter, prep worker, document preparer, and coil inspector. Accordingly, the ALJ concluded that Plaintiff was disabled on and after February 19, 2008, but not disabled prior to that date.  The ALJ granted benefits after February 19, 2008 and denied his application before that date.

## II. DISCUSSION

### A.     Standard Of Review

This Court reviews the decision of the Commissioner to determine whether there is substantial evidence in the administrative record supporting his decision.  42 U.S.C. § 405(g); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  If there is substantial evidence supporting the Commissioner's finding, this Court must uphold the decision even if this Court might have reasonably made a different finding based on the record.  *Simmonds v. Hecker*, 807 F.2d 54, 58 (3d Cir. 1986).

### B.     Review Of The Commissioner's Decision

Plaintiff challenges the decision of the Commissioner on grounds that the denial of benefits prior to February 19, 2008 is not supported by substantial evidence.  Specifically, Plaintiff argues that the ALJ erred by: (1) finding that Plaintiff's shortness of breath was not a severe impairment; (2) disregarding certain evidence in finding that Plaintiff retained the RFC for sedentary work; and (3) disregarding testimony from the vocational expert concerning the impact of certain limitations in mental functional areas on Plaintiff's ability to perform basic mental work activities.  The Court will consider each argument in turn.

    1.     *Shortness Of Breath*

Plaintiff alleges that he suffers from shortness of breath with minimal exertion, such as walking half a block.  Plaintiff argues that the ALJ erred at Step Two by finding this shortness of breath to be a "non-severe" impairment.  As noted above, an impairment is "severe" within the meaning of the Social Security regulations if it significantly limits the individual's ability to

perform basic work activities.[7]  An impairment is "not severe" when medical and other evidence establish only a slight abnormality that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. § 404.1521; SSR 85-28, 96-3p, and 96-4p.

Here, Plaintiff points only to Dr. Fernando's statement that Plaintiff is "limited because of his exertional dyspnea" in support of his argument.  As the ALJ explained in her decision, this opinion was entitled to less weight because it was based only on Plaintiff's self-report, and was inconsistent with other evidence in the record.  For example, at a subsequent examination, Dr. Fernando found Plaintiff's chest and lungs were clear, and the results of the pulmonary function test he administered were within normal limits.  Similarly, numerous progress reports from January 29, 2004 through October 26, 2005 indicate that Plaintiff had easy and regular respiration, and records from June 2006 through April 2008 do not note shortness of breath as one of Plaintiff's ailments.  Dr. Schmidt likewise did not list shortness of breath as one of Plaintiff's impairments.  Finally, despite Plaintiff's complaints of limiting shortness of breath, he never sought treatment for this condition, and his daily living activities demonstrate an ability to perform the requirements of basic physical work: Plaintiff reported to the consultative examiners that he shopped for and prepared his meals, cleaned his house, did laundry, and performed other chores.  This evidence, taken together, amply supports the ALJ's determination that Plaintiff's shortness of breath does not constitute a severe impairment.

2.    *RFC Determination*

At Step Four, the ALJ found that Plaintiff retained the RFC to perform sedentary work with certain additional limitations.  Plaintiff argues that this RFC does not "have anything to do

---

[7] Basic work activities are "the abilities and aptitudes necessary to do most jobs."  Examples of these include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling."  20 C.F.R. § 404.1521(b)(1).

with the facts of the case," (Pl. Br. 25), complaining that the ALJ (1) improperly rejected his treating physician's opinion that he was "disabled"; (2) improperly excluded Plaintiff's non-exertional impairments from the RFC; and (3) did not properly account for Plaintiff's back pain and AIDS.  These assertions are without merit.

First, the ALJ's decision to accord little weight to Dr. Schmidt's opinion that Plaintiff was "disabled" from September 20, 2006 through September 19, 2007 was permissible.  As an initial matter, the determination of whether or not a claimant is "disabled" under the Social Security Act is explicitly reserved to the Commissioner, not the treating professional.  *See* 20 C.F.R. § 404.1527(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . .  A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled").  The ALJ was therefore not required to give Dr. Schmidt's opinion on this issue any special significance.

Moreover, the ALJ found that Dr. Schmidt's opinion was unsupported by specific details as to Plaintiff's functional limitations, and generally inconsistent with other evidence in the record.  For example, while Dr. Schmidt listed AIDS as Plaintiff's primary diagnosis, there was no evidence in the record indicating that Plaintiff experienced significant AIDS-related complications, such as opportunistic infections, fatigue, fever, or weight loss.  Rather, treatment notes from Dr. Schmidt's hospital indicate that Plaintiff's HIV was considered well controlled.  Those treatment notes consistently report that Plaintiff came to the clinic alert, showed no motor or sensory deficits, and generally denied pain.  Similarly, while Dr. Schmidt opined that Plaintiff's functional capacity was adequate to perform only little or none of the duties of self care, Plaintiff had reported to the consultative examiners that he was able to dress and bathe

himself, prepare food, do general cleaning, laundry, and shopping, manage money, and take public transportation.  In light of this contradictory evidence, the ALJ appropriately exercised her discretion to determine that Dr. Schmidt's opinion deserved lesser weight.  *See Allen v. Bowen*, 881 F.2d 37, 41 (3d Cir. 1989) (treating physician's opinion may be rejected when ALJ points to other medical evidence of record).

Second, rather than "tak[ing] into account none of Plaintiff's non-exertional impairments," as Plaintiff contends (Pl. Br. 34), the ALJ explicitly incorporated the limiting effects of Plaintiff's depressive disorder into the RFC by limiting Plaintiff's functional capacity to simple, unskilled, and low-stress work.  This aspect of the RFC is supported by substantial evidence.  For example, Dr. Schmidt, Plaintiff's treating physician, opined that Plaintiff could understand, remember, and carry out simple instructions, and was not limited in his ability to respond appropriately to supervisors, co-workers, and work pressures.  Dr. Cavanaugh and Dr. Stafford likewise opined that Plaintiff could understand and follow simple instructions; perform simple tasks without special supervision; and interact appropriately with others.  These opinions were based on an examination in which Dr. Cavanaugh found that Plaintiff's attention, concentration, and memory skills were intact; his intellectual functioning was in the average range; and his insight and judgment were fair.

Plaintiff argues that the ALJ improperly disregarded Dr. Cavanaugh's opinion that Plaintiff would be unable to attend to a routine or maintain a schedule.  However, as noted by the ALJ, Dr. Cavanaugh attributed these limitations to Plaintiff's *physical* impairments.  The ALJ discounted this opinion because it was outside Dr. Cavanaugh's area of expertise as a psychologist, and also unsupported by the weight of the medical evidence concerning Plaintiff's physical condition, which demonstrated that Plaintiff's HIV was well controlled, and that

14

Plaintiff's back pain was manageable with over-the-counter pain relievers. The ALJ was therefore warranted in giving this aspect of Dr. Cavanaugh's opinion lesser weight.

Finally, the Court finds that the ALJ's determination that Plaintiff retained the capacity to perform sedentary work, despite his back pain and AIDS, is supported by substantial evidence. For example, Plaintiff's treating physician reported in November 2004 that Plaintiff could sit and stand with no limitations, as well as lift and carry up to ten pounds occasionally. Similarly, Dr. Fernando, following examinations of Plaintiff in December 2004 and January 2005, reported that Plaintiff's hand and finger dexterity were intact, his cervical spine and upper extremities had full range of motion, his strength was full throughout, and he had no neurological abnormalities. The ALJ appropriately found that Plaintiff's complaints regarding the limitations imposed by his back pain were not entirely credible because they were inconsistent with his treatment records, which show that he has not had any treatment for his back since 1997 and takes only over-the-counter medications for pain, and with his activities of daily living, which include doing household chores, cooking, shopping, and tending to personal needs. Finally, the ALJ appropriately found Plaintiff was not precluded from sedentary work by virtue of having AIDS, because, as noted above, there is no evidence in the record documenting a history of AIDS-related complications.

      3.   *Vocational Expert's Testimony*

Plaintiff argues that the ALJ erred at Step Five by disregarding testimony from the Vocational Expert concerning the impact of Plaintiff's "moderate limitations" in certain mental functional areas on his ability to perform work. This testimony was elicited through hypothetical questions posed by Plaintiff's attorney at the second hearing. These questions were based on findings in the Mental Residual Functional Capacity Assessment prepared by Dr. Stafford.

Specifically, in Section I of the Assessment, Dr. Stafford checked off that Plaintiff is

"moderately limited" in his ability to (1) understand, remember, and carry out detailed

instructions; (2) maintain attention and concentration for extended periods of time; and (3)

perform activities within a schedule, maintain regular attendance, and be punctual within

customary tolerances.[8]  The Vocational Expert testified that these limitations would have a

"negative impact" on a person's ability to work.

      The ALJ squarely addressed this testimony in her decision, explaining that she was not

bound by it because the Vocational Expert and Dr. Stafford had different understandings of the

meaning of "moderate."  The Vocational Expert conceded that he had "no idea" what Dr.

Stafford meant by "moderate."  For his purposes, "moderate" means that "the person is not

precluded from doing a particular task, but doesn't do it at the level that would be acceptable in

competitive employment."  The Social Security regulations do not specifically tie the definition

of "moderate" to the requirements of employment; rather, in the context of the Mental Residual

Functional Capacity Assessment, a physician should check "moderately limited" when the record

"evidence supports the conclusion that the individual's capacity to perform the [specified]

activity is impaired."  POMS § DI 24510.063(B)(2).   In light of these differing definitions, the

ALJ was entitled to give the Vocational Expert's testimony on the effect of the cited "moderate

limitations" little weight.  *See* SSR 00-4p (ALJ may not rely on evidence provided by a

vocational expert if that evidence is based on underlying definitions that are inconsistent with

_____

[8] Section I of the Mental Residual Functional Capacity Assessment "is merely a worksheet to aid in
deciding the presence and degree of functional limitations and the adequacy of documentation and does
not constitute the RFC assessment."  POMS § DI 24510.060(B)(2)(a).

Agency definitions).[9]

The ALJ appropriately gave greater weight to the Vocational Expert's opinion that a hypothetical individual of Plaintiff's age, education, work experience, and RFC would be able to perform the jobs of document preparer, coil inspector, and sorter. Plaintiff argues that this reliance was improper because the hypothetical question on which the Expert's opinion was based did not properly account for Plaintiff's mental limitations. However, the ALJ reasonably accounted for Plaintiff's mental condition in defining the RFC as limited to simple, unskilled, and low-stress jobs. As discussed above, this determination is supported by substantial medical evidence; accordingly, the ALJ's reliance on the Vocational Expert's testimony was proper. *See Plummer*, 181 F.3d at 431 (noting that a hypothetical question must reflect impairments supported by the record).

### III. CONCLUSION

For the reasons set forth above, and after careful review of the record in its entirety, the Court finds that the ALJ's conclusion that Plaintiff was disabled on and after February 19, 2008, but was not disabled prior to February 19, 2008 is supported by substantial evidence. Accordingly, this Court will **AFFIRM** the Commissioner's decision.

Therefore, **IT IS** on this 16th day of June 2010,

**ORDERED** that the decision of the Commissioner is **AFFIRMED**; and it is further

---

[9] In any event, the ALJ appropriately accounted for the "moderate limitations" Dr. Stafford identified in Plaintiff's ability to understand, remember, and carry out *detailed* instructions, and to maintain attention and concentration for *extended* periods by limiting Plaintiff to simple, unskilled work that involves only one or two steps. Dr. Stafford's finding that Plaintiff is "moderately limited" in his ability to perform activities within a schedule did not need to be accounted for in the RFC because, as discussed by the ALJ and herein, this finding was based on Dr. Cavanaugh's opinion, which was appropriately discounted.

**ORDERED** that this case is **CLOSED**.

**/s/ Faith S. Hochberg**

Hon. Faith S. Hochberg, U.S.D.J.